Hold on, Mr. Henley, while the courtroom clears. Mr. Henley, will you speak with us, please? Yes, sir. I can begin now? Yes, sir. At the time this cause of action arose, it's a 1983 civil rights complaint. Yeah. At that time, I was a homeless person. I had lived like that for about a year before this incident occurred. Right. I don't blame anyone, you know, for my situation. It was a 40-year struggle of alcoholism and a lot of bad choices, you know, that led me to that status. Instead of camping in the woods in a tent like a lot of them do, I rented a storage unit, you know, for shelter and to try to keep my stuff safe. What little I had. The storage facility was adjacent to an elementary school that had been closed down. It was empty and they'd moved somewhere else. A real estate company known as Michael Hower and Realty owned it. They had a big commercial for sale sign out there. For eight months, I took a shortcut through the parking lot of the school to get there. I'm going to be honest with you, I didn't want to go through the front gate. You know, you've got a bunch of code to go in there. I knew sooner or later they'd see my code being used every day and they'd know I'd spend the night there. So I come in through the back. Eight months, I didn't have no problem. I've never been around that school building. On the night in question, I had just rode into the parking lot on my bicycle. I hadn't even been there 60 seconds. I was seized by defendant Payne and there was at least four, maybe five other officers there. I don't know what they were doing there. He put the handcuffs on me right away. I said, what are you doing? He said, I'm arresting you for criminal trespass. And that charge was dismissed, right? Yes, sir, eventually it was. I tried to tell him, you know, what I was doing. We have limited time. We've read everything in the record. It did appear to me that perhaps the district court here made a mistake in saying that your complaint should be dismissed because of Heck versus Humphrey. Because after all, the charge of criminal trespass against you was dismissed. So you're not trying to argue that a conviction against you was somehow invalid or not. Thank you. Because you weren't convicted, right? No, sir. So it did appear to me perhaps the district court made a mistake about that and we need to send it back. I'm glad you feel that way. I've read Heck versus Humphrey, you know, the version in the Supreme Court reported. It's designed to stop people from using 1983 as a collateral attack on their conviction or sentence. Or confinement. Yes, sir. Yes, sir. You know, that's to stop them from going around habeas corpus remedies or direct appeal and using 1983. That's what they were concerned about. If we focus on the confinement aspect of Heck rather than the conviction aspect. Yes, sir. Doesn't your claim here necessarily imply that your confinement was unlawful? The arrest and the three weeks confinement, 21 days, yes, sir. I was arrested without probable cause. So under Heck, why isn't it incumbent on you to show favorable termination? Well, that's what defendant Payne, that's who was left, they dismissed the sheriff. He's alleging, you know, that he never has denied any of my allegations, you know, about the incident. All he's ever done was allege that my claim is barred by the favorable termination doctrine in Heck. That it wasn't favorably, excuse me, terminated. Now, there was a case in 2007 decided by this Court, McClish v. Nugent. I don't know if you're familiar with it. I am. It's a case in which there was no conviction. It sounds to me like that case is almost identical to mine, except Mr. Holmberg, who was involved in that case, agreed to enter PTI, pretrial intervention program in Florida. And for doing that, they dismissed a resisting arrest charge on him, misdemeanor. My case, you know, I had this criminal trespass. If, you know, it's very similar to his. Well, there's another case called Yubo in which we said, in which there was a conviction and we said dismissal, or sorry, a plea agreement, and we said a dismissal pursuant to a compromise was not a favorable termination. Yubo, though, was a malicious prosecution claim. That's another thing I want to bring up. A malicious prosecution claim, from what I understand, requires favorable termination. Right. That's under common law, a common law requirement. And you don't dispute that to the extent your 1983 claim is premised on malicious prosecution. I never raised that claim. You would have to show. I never raised that. I've raised false arrests. So you're just arguing about a Fourth Amendment claim that falls under false arrest. Yes, sir. Yes, sir. That's all you. False imprisonment, too, now, 21 days. Well, arrest outside of legal process. Yes, sir. Which was six hours rather than 21 days. Yeah. Until they got the warrant. I know what you're talking about. Yes, sir. But the point, there was no warrant at the time you were arrested. He didn't get a warrant until the next morning. Now, one thing I'd like to point out to you all about this warrant. I was arrested at 10 o'clock that night. There was no probable cause to arrest me. Well, that's, Mr. Henley, I think you'll be better served by not trying to argue the probable cause argument here.  It appears to me, and maybe you disagree, maybe you want us to go ahead and address that. But here's the problem I have. It seems to me that maybe the district court was wrong on heck. And that was the basis for the district court's ruling, right? Yes, sir. The district court did not address probable cause, right? That's the main reason it was dismissed. That's the only argument the defense has ever made. But the probable cause issue was not one that the district court addressed. Okay. This goes back to the district court. I understand. Let me tell you where I'm coming from on this, okay? Okay. I think the district court was probably wrong on heck. I think the rest of it, the state law claims the district court was probably right to dismiss. But your false arrest claim, insofar as the heck bar is concerned, I think the district court was probably wrong about that, okay? Yes, sir. I want to hear from your adversary before I totally make up my mind. Yes, sir. Okay? But it seems to me then it goes back to the district court. And then the officer is able to argue, in fact, I had probable cause. He didn't have permission to be on the school premises or whatever it is that he wants to allege. And that's something that then gets sorted out in the district court. And I've got to warn you, Mr. Henley, he gets something called what is called qualified immunity. He can raise the argument that not only did he have probable cause, but that he had a reasonable belief that he had probable cause, what is called arguable probable cause. It's not very often a very difficult thing for a police officer to satisfy. And it might be a problem for you down the road. But it doesn't seem to me that this is the place to sort that out. Okay. Does that make sense? I understand. He's not raised that defense yet, the qualified immunity, as far as I know. Right. That would be down the road. If I could mention one other thing. Certainly. I'm concerned about it. I hope this has nothing to do with probable cause argument. The warrant that was obtained the next morning says that I entered the property of Michael Howard and Realty without permission. I was arrested at about 10 o'clock that evening, and the warrant was issued at 5 a.m. How did Defendant Payne verify that I didn't have permission to be there, to cut across the parking lot? I don't believe he called Michael Howard and Realty in the middle of the night. You know, he didn't have no evidence or facts at his disposal to make that statement under oath. Okay. And that's what that dismissal of criminal action, you know, about the trespass case, that's what that's based on. You know, if the legal process is like a chain, a chain is only as strong as its weakest link, and that warrant, you know, has a false statement in it. I don't know how it's characterized. Thank you. And if you remove that, the whole thing, the whole warrant is a false statement. I'm sorry. Mr. Henley, you've saved five minutes. Yes, sir, I have. So why don't we hear from Mr. Ray, and then you listen to him, and if you have some things in your five minutes you want to say in response to what he has to say, you'll get the last word. Okay, thank you. Thank you. Mr. Ray. Mr. Henley, you can stay seated up here if you like. Thank you, sir. Good morning. May it please the Court. My name is Ryan Ray. I'm here on behalf of Appellee Deputy Payne, and I believe I may have a bit of an uphill battle this morning, it appears. You see where I'm coming from. Absolutely. So how far does heck go? How far do we take it? My concerns, and what I'd like to... I don't see where a dismissal of the criminal trespass charge can be called a favorable termination. I don't see why there's anything here to, you know, imply the invalidity of something with respect to his false arrest claim. I think our position is that it implies the validity of the entirety of the plea agreement, so that it would call into question the validity of the plea agreement, which was bargained for on the basis partially of the dismissal of the particular charge that is at issue here, which Deputy Payne arrested Mr. Henley for. How is that? How would it undermine the... Well, it's a bargain for contractual type agreement that leads to... There's a guilty plea for an unrelated charge. An unrelated charge, right? Right. So it's not that it doesn't... It may well be that he's guilty of the unrelated charge, and he agreed to that, right? That's possible. And he's not guilty of criminal trespass, a charge that was dismissed. That may be as well. That's possible. And if his allegation is that the arrest of him for criminal trespass was a false arrest, I don't see how that allegation or that complaint implies the invalidity of his conviction on the unrelated charge, particularly in the light of the dismissal of the criminal trespass charge. What am I missing? Without... I think you're right. Without a conviction, there's... What I'm arguing for, I suppose, is an extension of how FAR has been applied at this point. You're saying there's a plea agreement on another charge, and the trespass charge was dismissed pursuant to the plea agreement, and a dismissal pursuant to a plea agreement does not count as a termination favorable to the criminal defendant who becomes the 1983 plaintiff. Yes. Okay. Suppose... And Judge Pryor is pressing you on all of those points, but let me ask you a different question, which is suppose I agree with you on everything I just said. Okay, that just establishes that the plaintiff hasn't shown favorable termination. But why does he need to do that to the extent he's bringing a claim premised on false arrest rather than malicious prosecution? The whole theory of heck is you pick up... 1983 picks up background common law limitations. The background common law limitation of requiring favorable termination applied to malicious prosecution claims but not false arrest claims. If I may have one moment. Okay. If his federal claim is only going to be categorized as malicious prosecution, excuse me, as false arrest rather than malicious prosecution... Okay, but the difference between those two tort theories is one is a challenge to confinement that's done pursuant to... Process. Process. And let's assume I agree with you on that piece of the 1983 claim. But there's still a separate piece. It's admittedly small, but there's the piece challenging the detention, the arrest that was made without process and the overnight detention until they got the warrant. That analogizes to a false arrest claim, not a malicious prosecution claim. And the background rule for that piece of the claim is you don't need favorable termination. The plaintiff doesn't need to show favorable termination. It would survive a maybe wrong analysis. It would limit the scope of the claim against your client, but it seems to me there's still a piece of it that survives. That may well be, Your Honor. You have a tough order to defend. What happens is this goes back to the district court and your client can argue he at least had arguable probable cause, right? And you didn't raise that? No, sir. This was merely on hook. But you know what to do when you get there. Sorry, just on another point. Can I just ask you, you just, whom do you represent? Just deputy. Just the deputy. Correct. Though you, I think, had a section in your brief about the sheriff. On the heck issue, just the deputy. No, I understand. But do you represent, does your firm represent Sheriff Millsap as well? Yes, Your Honor. You do? Yes. And the claim against him, the vicarious liability basically, that went out on a formality review. I'm just trying to figure out if he's properly in the case. And I was troubled by the thought that he could be brought in when he's, so far as I can tell, he's never been served with anything. But then I saw that you briefed the issues as to him. So are you representing him in this? Yes. There was a question, sorry for the confusion, there was a question as to whether he should even, I guess, be in this appeal at all because of how the notice of appeal was designated. Right. There was a footnote in the briefing related to that. Do you agree that the appeal of the dismissal of the claims against Sheriff Millsap is properly before us? No, because I don't think it was properly designated. Because of the notice of appeal. On the notice, that was our position. But you don't have a separate argument about notice or service or anything along those lines? No, sir. Okay. Yes, sir. This is a relatively straightforward issue and I don't want to. Yeah, I mean, there are a lot of claims here that were dismissed that to me were properly dismissed. It's just the false arrest claim and the heck bar that the district court applied that appeared to me to be a potential error. And our concern was just the potential for, based on the most recent statistics I could find, something between 90 to 95 percent of, this is just an estimate of criminal cases that are resolved by plea agreements rather than going to trial resulting in. It may be, that all may well be true, but that doesn't mean that necessarily heck is the way to resolve them. When there's a 1983 complaint afterward about some aspect of the criminal process, such as the arrest. On a motion to dismiss. Right. If I may, I do have a question about some of the language that McClish wanted to address. Well, we usually are the ones asking the questions. We have some questions about it too. I should say I have a comment then. So in McClish, it said the question was antecedent one because the issue was whether heck applied at all because there was never any conviction. Yeah. And so here we have something distinguishable because there was an entry of a guilty plea on an unrelated charge. Yeah, but not the charge that was the basis for the arrest. So that would be one distinction I wanted to point out. Doesn't seem like it's a distinction, though, that helps you. Mr. Ray, thank you. Thank you for your time. And Mr. Henley, do you have anything you want to say in response? I've heard everything about the favorable termination. However, Sheriff Millsap, when I first filed the complaint right off the bat, you know, Judge Murphy, District Judge, dismissed Sheriff Millsap. He claimed in his order that I merely sued him under the doctrine of respondeat superior. Yes. Liability. It might sound like, you know, that's the only reason I sued him just because he's the sheriff, just because he's the high, you know, man. I didn't sue him, you know, under that doctrine. While I was being held in his jail, in his custody on this illegal charge, I sent that man a letter by certified mail. Right. Y'all may be familiar. I know y'all have read. Yeah, we've read that. Yes, sir. The problem I have with that, Mr. Henley, is that I don't think that just sending the sheriff a letter necessarily establishes or even alleges that he knew that you were wrongfully confined and didn't do anything about it. I tried to explain, you know, to him how it happened. It's a two-page letter. I put all the details in there. I told him there was no warning signs on the property. I was never told by the owner to stay off the property. That's the two requirements to make a bona fide trespass. I told him about that. Right. Also, I told him that I was sitting in there with a $5,000 bond for a misdemeanor trespass charge. The typical bond on a trespass case like that, the bond schedule calls for a $1,000 bond. They knew I wasn't a flat risk. You know, I don't know why they set my bond so high. But anyway, I told the sheriff about that. You know, he knew he was holding me under excessive bail. You know, the sheriff is the final decision maker. Maybe he couldn't have just turned me loose or something like that, but he could. I know a sheriff can do this, release you on an only cognizance bond or an alternative. He could have arranged a bond reduction hearing. You know, my bond was five times what it should have been. That's why I was sitting in there for three weeks. I couldn't hardly come up with the money, you know, to get out until my mother finally heard about what happened and felt sorry for me. She done washed her hands for a while. But she found out, you know, how they treated me, and she finally got me out. That's how I got out, $540 nonrefundable fee. Oh, by the way, sheriff Millsout never even answered my, never come talk to me, never looked at, never done nothing, you know, to try to help me. All right, after I'm released from jail, I wrote him one other letter, a second letter, and you all may be familiar with this, and I told him. Henley. Sir. You know, the sheriff doesn't have to necessarily believe everything he reads. And a letter from an inmate. Okay. And the receipt of that letter alone does not establish that the sheriff violated the Constitution. Does that make sense? That what you're saying makes sense, but he had the authority to order his subordinate to withdraw the warrant. If he had looked into it, he would have found that the warrant was illegal and that I was being held in his custody under excessive bail. You know, I had an Eighth Amendment claim on that. And a lot of the things Millsout, you know, is involved with doesn't have nothing to do with favorable termination. I don't know if, in all respect to Mr. Ray, I don't know if he's ever alleged that. But anyway, you know, Millsout's responsible for some things that Payne wasn't, like my bonds that held me in there on excessive bail. He was put on notice. What was going on. It wouldn't have took him long to go to the school, empty school over there. It was only five minutes from the sheriff's office. Five-minute drive. He could have went over there and seen how it looked. You know, he would have seen that I was telling the truth. Everything I led, it would have been hard for him to verify. And that letter from the jail establishes a causal connection. According to the case law I've read coming out of this circuit, it's not just because precarious liability in this case. There's a connection. His inaction by sitting back and not even talking to me about it. Okay. Mr. Henley, your time is up. I think we understand your argument. Yes, sir. I appreciate your consideration today, all three of you. All I can say is God bless you. Thank you. Thank you. You know, I was kind of thinking our court should have appointed you counsel, but you did pretty good on your end. I don't know. Did anybody take him this time? Well, Mr. Henley, I promise you, I've seen attorneys do a worse job. Really? Yeah. Well, I got a first cousin who's an attorney in Florida. Maybe it runs in the family. Mr. Henley, thank you. Thank you, sir, for letting me be heard. Thank you. That's all I can say. Thank you.